# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:06-cr-31 |
| | ) | Judge Collier/Carter |
| MAURICE ALEXANDER JOHNSON | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction

Defendant Maurice Alexander Johnson's Motion to Suppress evidence obtained by a state-authorized wiretap (Doc. 23) is before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). For the reasons stated herein, it is RECOMMENDED that the defendant's motion to suppress be DENIED.

### II. Relevant Facts

An evidentiary hearing was held before the undersigned Magistrate Judge on defendant's motion to suppress on September 12, 2006. Tennessee Bureau of Investigation (TBI) Special Agent Barry Brakebill was the only witness to testify at the hearing. He has been with the TBI since December 1994 and has a total of 25 years of law enforcement experience. Agent Brakebill testified to the following: On February 9, 2006, TBI Special Agent Muhonen prepared an affidavit and application for a wiretap on the defendant's cellular phone as part of a triple homicide investigation (*See* Defendant's Ex. 1). William H. Cox, District Attorney General for the Eleventh Judicial District of Tennessee, authorized the application of the wiretap of defendant's phone. Criminal Court Judge Rebecca Stern of the Eleventh Judicial District of Tennessee issued an order authorizing the wiretap on the same day. The TBI's listening post

where the communications were to be intercepted was located in Chattanooga, Tennessee inside the Eleventh Judicial District. Immediately thereafter, police intercepted a number of phone calls made to the defendant's cell phone indicating that the defendant was involved in drug trafficking. On February 10, 2006, Agent Muhonen amended the application for a wiretap to request permission to continue monitoring the defendant's cellular phone as part of a drug investigation. The amended application included a new telephone number which was later determined to belong to one James Ivens. Judge Stern approved this request in writing on the same day.

In some of the intercepted calls, police could hear a woman named "Special K" make requests to purchase cocaine. "Special K" would ask for a "quarter quarter" which Agent Brakebill testified constitutes two quarter ounces or one half ounce. The police did not discover the identity of "Special K while the wiretap was in place on the defendant's cell phone. It was some eight to ten days after the wiretap was dismantled that Agent Brakebill learned that a woman named Kimberly Ivens was Special K when he went to visit Ivens in the Monroe County Jail.

On March 13, 2006, Agent Brakebill learned that Maurice Johnson had been arrested on February 14, 2006, and that Kimberly Ivens had been arrested with Johnson at the same time and she was being held in the Monroe County Jail for a probation violation. He decided to go to the Monroe County Jail to talk to her as part of his investigation into Johnson's suspected drug dealing. At that time, March 13, 2006, he did not know that the "Special K" police had heard on the wire tap was Kimberly Ivens. Kimberly Ivens agreed to talk to Agent Brakebill and during the conversation she told Agent Brakebill she was "Special K" and she implicated herself and the defendant in drug dealing. She was released from jail later in March 2006, and she agreed to

make several controlled purchases for police from the defendant – which she subsequently did. At the last controlled buy, the defendant was arrested and a significant amount of crack cocaine was found on his person.

### III. Analysis

*A. State Law Does not Apply in Determining Whether Evidence From the Wiretap Should be Suppressed in Federal Court*

The defendant argues that because the evidence at issue was obtained by a state authorized wiretap, state law as well as federal law applies in determining whether the wiretap evidence is admissible in federal court. The government argues that federal law, not state law, determines the admissibility of evidence collected by state officers that is used in a federal trial. The defendant concedes that if state law does not apply, then the wiretap evidence at issue in this case is inadmissible. (*See* Transcript of Sept. 12, 2006 evidentiary hearing at 6). The defendant does not make any arguments that the wiretap at issue violated the federal wiretap act, Title III of the Omnibus Crime Control and Safe Streets Act, (Title III), 18 UlS.C. § 2510 *et. seq.*, or the Fourth Amendment.

It has long been established that federal law, not state law, applies in determining the admissibility of evidence in federal court. *See Elkins v. United States,* 364 U.S. 206, 223-24 (1960)*; Preston v. United States*, 376 U.S. 364, 366 (1964); *United States v. Bennett*, 170 F.3d 632, 635 (6th Cir. 1999). However, the inquiry in this particular case does not end here. The issue in this case is whether Title III requires that state law, as well as federal law, apply to determine the admissibility of wiretap evidence in federal court where the wiretap was authorized by a state judicial officer. *See United States v. Williams,* 124 F.3d 411, 427-428 (3d Cir. 1997)

(holding "it is a general rule that federal district courts will decide evidence questions in federal criminal cases on the basis of federal, rather than state, law" and concluding that the court must look to the text of Title III to determine if the court should apply state law in determining the admissibility of wiretap evidence).

The Sixth Circuit has addressed the applicability of state law in determining the admissibility of evidence obtained from a wiretap authorized by a federal judge, as opposed to a state judge. *See United States v. Votteller*, 544 F.2d 1355, 1362 (6th Cir. 1976) ("Evidence lawfully obtained under federal law is admissible in federal courts even though it may be a violation of state law.") Neither the Supreme Court nor the Sixth Circuit, however, has addressed the different and narrow question the instant case presents to the Court: Does federal law, *i.e.,* Title III, require state law, as well as federal law, to apply in determining the admissibility of wiretap evidence in federal court where the wiretap was sought and authorized solely by state actors? At least one United States Court of Appeal, when confronted with this narrow issue, has answered this question in the affirmative on the basis of 18 U.S.C. § 2516(2) of Title III. Section 2516(2) states in relevant part:

> The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and such judge may grant *in conformity* with section 2518 of this chapter and *with the applicable State statute an order authorizing, or approving the interception of wire, oral, or electronic communications by investigative or law enforcement officers* having responsibility for the investigation of the offense as to which the application is made....

(emphasis added). In *United States v. Edwards*, 69 F.3d 419, 428 (10th Cir. 1995), Oklahoma

4

state law enforcement officers in the course of a state investigation obtained an order from a state judge authorizing a wiretap which later produced evidence the prosecutor sought to introduce into a criminal trial against the defendants in federal court. The defendants argued the wiretapping evidence was inadmissible because it violated the Oklahoma wiretapping statute. The *Edwards* Court applied Oklahoma law to the suppression issue stating, "under the federal wiretap statute, 18 U.S.C. § 2516(2), we must defer to state law on the question of the validity of a wiretap order obtained in state court under state law." *Id.* at 428. Nevertheless, the *Edwards* Court upheld the district court's decision to admit the evidence on the ground that the wiretap had complied with Oklahoma law. *Id.* at 428-29. *See also*, *United States v. McNulty*, 729 F.2d 1243, 1264 (10th Cir. 1984) (Section 2516(2) "permits receipt of state authorized wiretap evidence only if the state authorization complies with both the federal statute *and* with the applicable state statute;" and "*federal law* prohibits introduction of evidence obtained by state agents proceeding under section 2516(2) where state wiretap order requirements are violated.") (emphasis is original); *United States v. Davis*, 124 Fed. Appx. 838, 842, n.15 (5th Cir. 2005) (unpublished) ("Federal law governs the admissibility of state-authorized wiretap evidence in federal court. State-authorized wiretaps must comply with federal and state law [pursuant to 18 U.S.C. § 2516(2)"].

The government cites *United States v. Glasco*, 917 F.2d 797 (4th Cir. 1990); *United States v. Fregoso*, 60 F.3d 131314 (8th Cir. 1995) and *United States v. Brazel*, 102 F.3d 1120, 1154 (11th Cir. 1997) in support of its position that state law is not applicable in determining the admissibility of wiretap evidence, regardless of whether the wiretap is authorized by a state or federal judge. Neither *Glasco* nor *Fregoso* are factually on point, however, and therefore do not

support the government's (or defendant's) position. In *Glasco*, the government sought to introduce evidence in the form of recorded conversations between the defendant and an informant obtained when the informant consented to wear a body wire. In that circumstance, where one party to the conversation consents to the recording, federal law does not require a wiretapping authorization order and none was obtained – either from a state or federal judge. *Id*. at 800-01. The *Glasco* court rejected the defendant's argument that state law applies in determining the admissibility of the evidence stating, "[i]t is well settled that in a federal criminal prosecution, federal standards govern the admissibility of evidence" and "the fact that state officers obtained evidence with no federal involvement does not alter the general rule." *Glasco*, 917 F.2d at 798-99. While these statements would seem to support the government's position, the *Glasco* Court, in rejecting the defendant's argument that state law applied, explained:

> Far from establishing the general applicability of state law to wiretapping cases, however, *Manfredi* and similar cases apply to exclude evidence in a federal court only if the *investigating officers obtained judicial authorization for a wiretap from a state court*. Moreover, it is federal law, the text of the federal wiretapping statute itself, 18 U.S.C. § 2516(2), that requires the application of state law under such circumstances. *McNulty,* 729 F.2d at 1264. As other circuits have recognized, state law is simply irrelevant in a federal prosecution if the investigating officers, even state officers acting alone, *are not acting under the authorization of a state court.*

*Id.* at 799 (emphasis added). Thus, in dicta at least, it would appear that *Glasco* actually supports defendant Johnson's argument.

In *Fregoso,* the Eighth Circuit stated, "[w]e have consistently held that evidence obtained without violating the Constitution or federal criminal law is admissible in a federal criminal trial even if the evidence is obtained in violation of state law." *Fregoso*, 60 F.3d at 1320. However,

6

in *Fregoso*, the evidence at issue was derived from trap and trace devices, not wiretaps. *Id.* Section 2516(2) of Title III, which provides the basis used by some federal courts to apply state law to state-authorized wiretaps, does not apply to trap and trace devices. *Id*. at 1321 ("Title III makes it clear that devices which satisfy the statutory definition of pen registers or trap and trace devices set forth in 18 U.S.C. § 3127 are exempted from its requirements"). Thus, the *Fregoso* Court's holding that federal law, not state law, governed the admissibility of evidence at issue in that case does not addressed the question of whether Section 2516(2) requires the application of state law in determining the admissibility in federal court of evidence derived from wiretaps as opposed to trap and trace devices.

On the other hand, at least five United States Courts of Appeals have held that state law does not apply in determining the admissibility of evidence derived from state-authorized wiretaps. In *United States v. Padilla-Pena*, 129 F.3d 457, 464 (8th Cir. 1997), the Eighth Circuit rejected the defendant's argument that state law applied to admissibility issues of wiretap evidence obtained by state police and authorized by a state judge. In so holding, the court stated without elaboration and without reference to Section 2516(2):

> Appellants also contend that the government's wiretap minimization procedures violated Neb.Rev.Stat. § 86-705(6) (Reissue 1994). Having determined that the government agents acted reasonably in their efforts to comply with the minimization requirements of 18 U.S.C. § 2158(5), we need not consider this argument. We have consistently held that evidence obtained in violation of a state law is admissible in a federal criminal trial if the evidence was obtained without violating the Constitution or federal law.

In *United States v. Brazel*, 102 F.3d 1120 (11th Cir. 1997), the federal government sought to introduce conversations recorded from a cordless phone and intercepted by state police during

7

the course of their investigation. The Eleventh Circuit rejected the defendant's argument that state law applies in determining admissibility of the conversations. *Id.* at 1154-55. Like the Eighth Circuit, the Eleventh Circuit reached this decision with no reference to Section 1516(2), stating simply, "It is well settled that federal law governs the admissibility of tape recordings in federal criminal cases, and complaints that the evidence was obtained in violation of state law are of no effect." *Id.* at 1154 (internal citations omitted).

In *United States v. Miller*, 116 F.3d 641, 661 (2d Cir. 1997), the Second Circuit dismissed as dicta language in previous Second Circuit cases which appeared to support the contention that state authorized wiretaps must comply with Title III *and* state law. *Id.* at 661. The Court rejected the defendant's argument that Section 2516(2) mandated application of state law to the state wiretap at issue noting "the dicta in these cases has never been applied to exclude evidence." *Id.* Finally, in rejecting the defendants' argument that a prior state court ruling to suppress certain evidence derived from a state authorized wiretap was not binding on the federal court, the Second Circuit stated, "state court rulings in a criminal trial are not binding on a federal court because the state and national sovereignty are separate and distinct from one another." *Id.* at 663 (internal citation omitted); *see also United States v. Amanuel*, 418 F. Supp.2d 244, 248 (W.D.N.Y. 2005) (holding that pursuant to the Second Circuit's opinion in *Miller*, Section 2516(2) does not operate to apply state law to admissibility questions in federal court of evidence derived from state-authorized wiretaps.)

The First Circuit in *United States v. Charles,* 213 F.3d 10, 18-21 (1st Cir. 2000), a case also factually on point, rejected the argument that Section 2516(2) required the application of state law to admissibility questions in federal court of evidence obtained from state-authorized

wiretaps. The Court concluded, in essence, that Section 2516(2) did not trump the long standing rule that the test for admissibility of evidence in federal court "is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." *Id.* at 19 (citing *Elkins v. United States*, 364 U.S. 206, 223-24 (1960)).

Finally, in *United States v. Williams*, 124 F.3d 411, 427 (3d. 1997), *cert. denied*, 522 U.S. 1051 (1998), the Third Circuit held Section 2516(2) did not operate to apply state law in federal court to determine whether to suppress evidence derived from a state authorized wiretap. In this case, the alleged violation of state law involved an illegal disclosure of evidence after it was lawfully intercepted by the state authorized wiretap. The Third Circuit examined 18 U.S.C. § 2518(10) which the court found to set out the "exclusive grounds for suppression under Title III." *Id.* at 427. The court found that none of the three grounds set out in Section 2518(10) "applies to evidence that is *intercepted lawfully* but that is later *disclosed improperly*."[1] *Id.* (emphasis added). The *Williams* defendants argued that pursuant to Section 2516(2), which requires an authorization order signed by a state judge must be "in conformity with ...the applicable State statute," Pennsylvania's law regarding disclosure of wiretap evidence applied resulting in

---

[1]Section 2518(10) (a) states that suppression of wiretap evidence may be sought on the following grounds:

**(i)** the communication was unlawfully intercepted;
**(ii)** the order of authorization or approval under which it was intercepted is insufficient on its face; or
**(iii)** the interception was not made in conformity with the order of authorization or approval.

9

suppression of the evidence. The Third Circuit soundly rejected this argument on the ground that since Section 2518(10) "makes no mention of *federal or state* disclosure violations, we see no basis for holding that this provision authorizes suppression for state, but not federal, disclosure violations." *Id.* at 427 (emphasis is original).

Both the government and the defendant have support for their respective arguments. While the issue is a difficult one, the undersigned finds the better course is that taken by the Eighth, Eleventh, Second, First and Third Circuits in *Padilla-Pena*, *Brazel, Miller, Charles,* and *Williams*, respectively. That Section 2516(2) requires the application of state law in admissibility questions in federal court of evidence obtained from state authorized wiretaps is not an inevitable interpretation of this section. Section 2516(2) "has been interpreted to mean that states may enact wiretapping statutes that are more restrictive than Title III, but that Title III sets the minimum requirements for all wiretapping and that none may permit wiretapping on a basis less restrictive than Title III." *United States v. Megahey*, 553 F. Supp. 1180, 1192 (D.C.N.Y. 1982). This interpretation of the section does not require that evidence be suppressed in federal court based on state law, and I could find no evidence that Congress intended such a result when it enacted Title III and, more specifically, Section 2516(2). Absent a clear intention from Congress to apply state law to suppression questions in federal court, I am loath to abandon the long standing rule enunciated in *Elkins v. United States*, 364 U.S. 206, 224 (1960) ("The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.") Consequently, I conclude state law does not apply in determining whether evidence obtained from a state authorized wiretap should be suppressed in federal court.

At the evidentiary hearing on the defendant's motion to suppress, defendant conceded if state law did not apply in determining the admissibility of wiretap evidence in this case, he could not prevail on his motion. Therefore, the undersigned RECOMMENDS defendant's motion to suppress be DENIED.

*B. In the Alternative, Even if State Law Applies, the Wiretap Evidence Is Admissible*

The defendant argues that the Tennessee Wiretap Act, Tenn. Code Ann. § 40-6-301 *et seq.*, does not speak to issues concerning the recording of communications made with the use of cellular telephones; instead, according to defendant, communication by cellular telephones is addressed in Tenn. Code Ann. § 39-13-604, entitled "Cordless and cellular phone transmission: recording or dissemination."[2] Defendant further argues that by the Tennessee Legislature's "excluding cordless and cellular phones from its wiretap statute found at T.C.A. 40-6-303," "[t]he net effect is that cellular and cordless phones are excluded from the Tennessee statute thereby making it a more stringent statute than that under federal law. Tennessee law, therefore, applies." (Defendant's Reply at 2; Doc. 28). I find the defendant's argument puzzling. Assuming defendant's argument to be correct, that Tenn. Code Ann. § 39-13-604 – not Tenn. Code Ann. § 40-6-301 *et seq.* – applies to cellular phone communications, defendant has completely overlooked Tenn. Code Ann. § 39-13-604(f)(1) which permits a "law enforcement officer, ... while in the course of his employment, [to] record a protected communication, where

---

[2]Tenn. Code Ann. § 39-13-604(a) defines "Cellular radio telephone" as "a wireless telephone authorized by the federal communications commission to operate in the frequency bandwidth reserved for cellular radio telephones." Section 39-13-604(a)(2) states "'Communication' includes, but is not limited to, communications transmitted by voice, data, or image, including facsimile."

preservation and retention of the recorded communication are pertinent to a criminal investigation; provided, that the officer follows the procedure set out in this subsection." Section 39-13-604(2) sets forth certain procedures which must be followed to lawfully record "cellular radio phone" communications. Defendant has made no argument that the law enforcement officers who recorded the communications at issue in this case failed to follow any of those requirements set forth in Section 39-13-604(f)(2) and, based on the facts presented to me, I can see no violations and decline to speculate further as to what the defendant may find objectionable in this case under Section 39-13-604(f)(2). Accordingly, to the extent that Tenn. Code Ann. § 39-13-604, in addition to Title III and the Fourth Amendment, applies in the instant case to determine the admissibility of wiretap evidence, I conclude Tenn. Code Ann. § 39-13-604 does not require suppression of any of the wiretap evidence.[3]

---

[3] The government argues that if state law, as well as Title III, applies in the instant case in determining the admissibility of the wiretap evidence, then the Tennessee Wiretap Act, Tenn. Code Ann. § 40-6-301 *et seq.*, not Tenn. Code Ann. § 39-13-604, applies. The defendant argues that if the Court should determine the Tennessee Wiretap Act applies, then the wiretap at issue in this case violated several of the Tennessee Wiretap Act's provisions. I find it unnecessary to address this issue given the defendant's argument that the Tennessee Wiretap Act does not apply and given my conclusion that state law does not apply to determine the admissibility of state-authorized wiretap evidence in federal court.

## IV. Conclusion

      For the reason stated herein, it is RECOMMENDED that defendant's motion to suppress be DENIED.[4]

          s/William B. Mitchell Carter
          UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).